UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Chad L. Monson,

                  Debtor.                      BKY 14-42151

_____

J. Richard Stermer, Trustee,                      ADV 14-4128

                  Plaintiff,

v.                                                              MEMORANDUM AND
                                                              OPINION

Jo Ann Monson and Chad L. Monson,

                  Defendants.

Chad L. Monson,

                    Counter-claimant,

v.

J. Richard Stermer, Trustee,

                    Counter-defendant.

Chad L. Monson,

                    Cross-claimant,

v.

Jo Ann Monson,

                    Cross-defendant.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *03/31/2015*
Lori Vosejpka, Clerk, by LH

Jo Ann Monson,

        Cross-claimant,

v.

Chad L. Monson,

        Cross-defendant.

Jo Ann Monson,

        Counter-claimant,

v.

J. Richard Stermer, Trustee,

        Counter-defendant.

_____

At Minneapolis, Minnesota, March 31, 2015.

This adversary proceeding came on for trial on January 27, 2015, to determine whether the debtor had established a homestead prior to or after the attachment of a judgment lien. Mathew R. Burton appeared on behalf of the plaintiff, Stephen J. Creasey on behalf of defendant Jo Ann Monson, and Thomas Flynn on behalf of defendant Chad L. Monson. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 7001, and Local Rule 1070-1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

For the reasons stated below, the court finds that the homestead was not established prior to the attachment of the judgment lien such that it can be avoided pursuant to 11 U.S.C. §522(f).

2

## FACTS

The following facts were either stipulated to by the parties or found by the court after the trial.

1. The Trustee is the duly-appointed Chapter 7 Trustee of the bankruptcy estate of Debtor Chad L. Monson ("Debtor").

2. On May 19, 2014 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of 11 U.S.C. §§ 101 et seq. The case is now pending in this court.

3. The Amended Complaint is brought under Bankruptcy Rule 7001, and this action arises under 11 U.S.C. §§ 544, 547, 550, 551, 522 and Minn. Stat. § 513.45. The court has jurisdiction over this adversary proceeding, which is authorized under 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 7001, and Local Rule 1070-1.

**The Lien of Jo Ann Monson**

4. The Debtor and Jo Ann Monson were married on June 23, 2001, and a judgment and decree of dissolution of the marriage was filed on August 27, 2012, in Kandiyohi County. The Debtor and Ms. Monson agreed to share 50% custody of their children. The children typically alternated one week with each parent.

5. The judgment was amended on October 18, 2012. As part of the property settlement between the parties, the amended judgment provided, among other requirements, that the Debtor pay to Ms. Monson eight payments of $205,000 commencing on December 1 of each year until a total of $1,640,000.00 was paid in full.

6. The Debtor defaulted under the terms of the amended judgment and decree. On August 26, 2013, the Kandiyohi County District Court entered and docketed a judgment in the amount of $1,590,000.00 in favor of Ms. Monson ("Judgment Lien").

3

7. The judgment filed in Kandiyohi County constitutes a judgment lien against all property of the Debtor located within the county including, the following property located at 1502 45th Ave. S.E, Willmar, MN 56201, parcel number 33-025-0054 ("1502 Property"), and described as:

> All that part of Sublot "A" of Lots 1 to 8 inclusive, Section 26, Township 119, Range 35, of the Plat of Grass Lake in Section 23, 24, 25 and 26, Township 119, Range 35, described as follows: Beginning at the Northeast corner of said Sublot "A"; thence on an assumed bearing of S 8°59'33" W, along the East line of said Sublot "A", a distance of 895.00 feet to the North berm of County Ditch No. 23; thence on a bearing of N 45°04´20" W, along said berm, 1049.28 feet; thence on a bearing of N 80°48´ E, 894.28 feet to the point of beginning.

This property also includes a contiguous piece of property, parcel number 33-025-0070, separately described as:

> Government Lot 6, and Sublot "A" of Lot 6 of Section 25, in the Plat of Grass Lake, in Sections 23, 24, 25 and 26, Township 119N, Range 35W of the Firth Principal Meridian, Kandiyohi County, Minnesota.

8. Since the judgment lien and corresponding obligation arose as part of a property settlement arising out of the Debtor and Ms. Monson's divorce, they have stipulated that this judgment is excepted from the Debtor's discharge pursuant to 11 U.S.C § 523(a)(15).

**After the Divorce**

9. After the Debtor and Ms. Monson were divorced in August 2012, the Debtor resided in a farmhouse located on his business's property at 7600 Highway 71 South, Willmar, MN 56201 ("7600 Farmhouse"). This had been the residence of the Debtor, Ms. Monson, and their children while still married. The farmhouse had five bedrooms, two bathrooms, a refrigerator, stove, oven, washer, dryer, and utility services. The Debtor kept all but a few

4

items at the 7600 Farmhouse during the relevant time period from approximately July 1, 2013 to August 26, 2013.

10. The Debtor's business property, which included the 7600 Farmhouse, was in foreclosure during the relevant time period.

11. During the foreclosure and until a modular home was finished on or about November 26, 2013, the Debtor had complete use of the 7600 Farmhouse. He stayed there at least half of the time. When he had custody of his children, they stayed at the 7600 Farmhouse. He used the 7600 Farmhouse for, among other things, showering, doing laundry, and storing his belongings.

12. The Debtor's family owned recreational land located at the site of the 1502 Property. The Debtor intended to build a home on the property, and to occupy it as his permanent house. In September 2012, the Debtor and his father built a road, constructed a foundation pad, and erected a mailbox on the 1502 Property.

13. On July 16, 2013 the Debtor obtained a building permit to place a modular home at the 1502 Property. The Debtor purchased or otherwise obtained a modular home with the assistance of Dennis Larson and Lori Larson on October 10, 2013.

14. According to the Mechanic's Lien Statement filed by Dennis and Lori Larson dated December 10, 2013, the Larsons furnished and set up the modular home on the Debtor's property. It was completed on November 26, 2013. Since then, the Debtor has lived in the home located on the 1502 Property.

15. On August 7, 2014, the Debtor changed his mailing address with the U.S. Postal Service from 7600 Highway 71 South, Willmar, MN 56201 to 1502 45th Avenue S.E, Willmar, MN 56201. This is over a year after he claims he established a homestead on the 1502 Property.

**The Debtor's Claim of Exemption**

16. There is no dispute that the Debtor is currently residing at the 1502 Property. This was the Debtor's homestead on the date of the Debtor's bankruptcy filing.

17. The Debtor claims that the 1502 Property became his homestead under Minn. Stat. § 510.02 prior to the time the Judgment Lien attached to the 1502 Property on August 26, 2013.[1]

18. In July 2013, the Debtor first asserted that he had established a homestead at the 1502 Property by filing a homestead application with the county, which listed the 1502 Property as his homestead. During this period, he stayed part of the time in a camper.

19. It is the camper and land at the 1502 Property that the Debtor claims became his homestead in July 2013.

20. He testified that he relocated to the 1502 Property because the business property, including the 7600 Farmhouse, was being foreclosed upon.

**The Camper**

21. In July 2013, the Debtor borrowed a 28 foot camper owned by his friend Thomas John Egge. Mr. Egge moved and parked the camper next to a storage shed on the 1502 Property.[2] The camper is not self-propelled but must be pulled by another vehicle.

22. The wheels of the camper were not removed and the camper was not permanently affixed in any way to the land.

23. Mr. Egge left most of his belongings, including dry goods, kitchen supplies, and clothes, in the camper. The Debtor brought some personal items to the Camper, including a few pieces

---

[1] No other real estate owned or in the possession of the Debtor is subject to the Debtor's claim of exemption.

[2] There was inconsistent testimony regarding the items stored in the shed. The Debtor testified that he stored furniture, including a dresser, and other personal effects in the shed. In contrast, Mr. Egge testified that the shed contained water supplies and lumber, but did not contain any of the Debtor's personal effects.

6

of clothing and several dishes to the camper, but left almost all of his belongings at the 7600 Farmhouse.

24. The camper had basic amenities. It included a propane-powered stove, microwave, toilet connected internally to a small septic tank, shower, water tank, and built-in furniture. The Debtor occasionally took showers in the camper, but avoided it because of the camper's limited water supply. The camper did not have a washer, dryer, and refrigerator. The Debtor used a portable cooler to store perishable foods. He used a small, external electrical generator to power the camper.

25. The camper was not connected to any utility services, including water, gas, electricity, internet, and cable.[3]

26. The Debtor had custody of his children half of the time. When they were with him, they spent time during the day at the 1502 Property. The children helped the Debtor construct a foundation pad and basement, but spent most of their time on the 1502 Property playing and doing recreational activities.

27. The Debtor testified that whenever he had custody of his children, which was 50% of the time, they stayed at the 7600 Farmhouse because the camper was not fit for his children to live in.

28. The use and possession of the camper was not exclusive as Mr. Egge took the camper for a vacation in August 2013. He later brought it back on the 1502 Property. During this time, the Debtor lived at the 7600 Farmhouse.

---

[3] These services were still active at the 7600 Farmhouse.

**The Bankruptcy Petition and Adversary Proceeding**

29. On May 19, 2014, the Debtor filed a voluntary petition for chapter 7 bankruptcy. On June 30, 2014, the Debtor filed amended Schedules A and C. In amended Schedule C, the Debtor claimed a homestead exemption in the 1502 Property under Minn. Stat. § 510.01.

30. On July 7, 2014, the chapter 7 trustee filed an adversary proceeding against the Debtor and Ms. Monson alleging insider preference under 11 U.S.C. § 547(b), insider preference under Minn. Stat. § 513.45, and declaratory judgment under 28 U.S.C § 2201(a).

31. Counter-claims and cross-claims were filed by the Debtor and Ms. Monson. The Debtor claimed that the Judgment Lien impaired his homestead exemption and Ms. Monson claimed that her lien was established prior to the establishment of a homestead and could not be avoided by the trustee or the Debtor.

32. The trustee and Ms. Monson have reached an agreement relating to the claims and have stipulated that the only issue for trial is whether the Debtor established his homestead prior to the filing of Ms. Monson's judgment on August 26, 2013[4] such that the lien could be avoided pursuant to 11 U.S.C. § 522(f).

## DISCUSSION

**I.    Judgment Lien**

Under 11 U.S.C. § 522(f)(1)(A), "a debtor may avoid the fixing of a lien if three requirements are met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) the lien impairs an exemption to which the debtor would have been entitled; and (3) the lien is a judicial lien." *Wilding v. CitiFinancial Consumer Financial Services, Inc. (In re Wilding)*, 475 F.3d 428, 431 (1st Cir. 2007). "The debtor bears the burden of proof by a preponderance of the evidence on every element of Section 522(f)." *In re Armenakis*, 406 B.R. 589, 604 (Bankr.

---

[4] *See In re Monson*, BKY 14-42151, ECF No. 53 and 58.

8

S.D.N.Y. 2009). Here, the Debtor asserts that his homestead exemption is impaired and seeks to avoid the Judgment Lien.

Under the first element, the Debtor must establish that the Judgment Lien impairs an exemption to which the Debtor would have been entitled.) *In re Estad,* 295 B.R. 905, 907 (Bankr. D. Minn. 2003). This has been interpreted to mean that the homestead exemption under Minnesota law "…does not extend to an interest in property represented by a judgment lien that attached to the property <u>before</u> the exemption came into existence." *Id*. at 907 (citing *Rusch v. Lagerman et al.,* 194 Minn. 469, 261 N.W. 186, 187 (1935) (emphasis added)). The court must determine if the Debtor had established a homestead under Minnesota law that would have been exempt from creditors on August 26, 2013, the date that Ms. Monson's Judgment Lien attached to the 1502 Property.

**II.     Homestead**

Minn. Stat. § 510.01 sets forth the requirements for establishing a homestead:

> The house owned and occupied by a debtor as his dwelling place, together with the land upon which it is situated… shall constitute the homestead of the debtor and his family….

*See In re Kyllonen*, 264 B.R. 17, 27 (Bankr. D. Minn. 2001). "Tracking the language of § 510.01, the debtor must establish both ownership and occupancy" for the property to qualify as a homestead. [5] *In re Smoinikar*, 200 B.R. 640, 643 (Bankr. D. Minn. 1996).

---

[5] The trustee also argues that the 1502 Property does not qualify as a homestead under Minn. Stat. § 273.124, the Minnesota Tax Code. The court need not analyze this issue because the proper inquiry is under Minn. Stat. § 510.01, the Minnesota debtor-creditor statute. *See In re Estate of Bonde*, 694 N.W.2d 74, 76-77 (Minn. Ct. App. 2005) (an individual may have multiple homesteads under the Minnesota Tax Code, Minn. Stat. § 273.124, but may only have a single homestead under the Minnesota debtor-creditor statute, Minn. Stat. § 510.01.)

### A. Ownership

To establish the existence of a homestead, the Debtor must first prove that he owned the house. *Denzer v. Prendergast*, 267 Minn. 212, 218, 126 N.W.2d 440, 444 (1964) (the house must first be 'owned and occupied' as a dwelling place, then the land may become part of the house to constitute the homestead).

Here, the Debtor presented no evidence that he owned the camper—his purported dwelling prior to August 26, 2013—or had any type of property interest in the camper. The Debtor borrowed the camper. He was not renting or intending to purchase it. There was no type of written agreement with Mr. Egge. The Debtor did not have exclusive use or possession, as shown by the fact that Mr. Egge took the camper to use for vacation in August 2013. Although the parties agree that the Debtor owned or had an interest in the land upon which the camper was parked, ownership of the land, without ownership of the dwelling, is not sufficient to create a homestead.

The Debtor failed to satisfy the ownership requirement under Minn. Stat. § 510.01.

### B. Occupancy

#### i. Actual Occupancy

In order to establish a homestead, the Debtor must also prove "actual occupancy" to show that he "occupied" the dwelling. *Id*. "Actual occupancy, as distinguished from mere possession … is the prominent idea associated with the word 'homestead.' Of course, the term 'actual occupancy' must receive a reasonable construction, and is not to be understood as requiring constant personal presence, so as to make a man's residence his prison … [but], there must be actual and continued operation of and residence upon the premises in order to constitute a homestead." *In re Sikkink*, 60 B.R. 298, 300 (Bankr. D. Minn. 1986).

10

Here, there was no continued operation and use of the camper as a principal or permanent residence. The Debtor stayed over half of the time at the 7600 Farmhouse because the camper was not a fit place for his children to stay. The Debtor stayed at the 7600 Farmhouse when Mr. Egge had the camper on vacation. The Debtor kept virtually all of his personal property at the 7600 Farmhouse. The Debtor had full access to and used the 7600 Farmhouse during the relevant time period. He washed and dried his clothes, watched television, and took showers at the 7600 Farmhouse. The Debtor relied on the 7600 Farmhouse for its utility services. The facts show that the Debtor used the 7600 Farmhouse as his residence. Thus, the court finds that the Debtor did not occupy the 1502 Property as required under Minn. Stat. § 510.01 prior to August 26, 2013.

### C.    Intent

The Debtor argues that his actions and several signed documents show that intended to occupy the 1502 Property and that his intent establishes his occupancy. Although courts frequently look to intent in cases addressing the establishment of a homestead, mere intent is not enough. *See Muscala v. Wirtjes,* 310 N.W.2d 696, 698 (Minn. 1981); *In re Smoinikar*, 200 B.R. at 640 (stating that "no Minnesota case has allowed a Debtor to establish a homestead [ ] merely by intent") (emphasis in original); *In re Estad*, 295 B.R. at 908 ("spending occasional overnights while working on the basement of an intended future residence does not meet the threshold of living and abiding on the property").

The Debtor argues that the construction of a road, placement of a mailbox, and execution of documents listing the 1502 Property as his address show an intent to make the 1502 Property his homestead.[6] The Debtor's purported intent to make the 1502 Property his homestead before

---

[6] *See* Plaintiff's Ex. 4 (application for building permit), 9 (Minnesota driver's license report), 11 (U.S. Postal Service record), 12 (modular home purchase order), and 24 (homestead application).

11

August 26, 2013, however, is undercut by documents proffered by the trustee which show that the Debtor listed other addresses as his homestead at or near that time.[7] The Debtor did not change his address with the United States Post Office until a year after the relevant time period. The Debtor spent over half of his time at the 7600 Farmhouse. The facts indicate that the Debtor intended to make the 1502 Property his homestead at some time in the future. The Debtor's intent to occupy the 1502 Property is insufficient to support a finding of actual occupancy under Minn. Stat. § 510.01.

### D.    Non-traditional Dwelling House

The Debtor argues that a structure other than a building, such as a tent or boat can constitute a dwelling, citing cases from Florida, Alabama, and Wisconsin. *See, e.g., In re Meola,* 158 B.R. 881 (Bankr. S.D. Fla. 1993); *S. Walls, Inc. v. Stilwell Corp.,* 810 So.2d 566, 571 (Fla. 5th D.C.A. 2002); *In re Scudder*, 97 B.R. 617, 619 (Bankr. S.D. Ala. 1989); *In re Laube*, 152 B.R. 260, 262 (Bankr. W.D. Wis. 1993). First, the Florida and Alabama statutes differ from Minnesota's statute because they allow homestead qualifications to extend to travel trailers and houseboats.[8] *See id.*; Fl. Stat. § 222.05 and Alabama Code, § 6-10-2. Second, in all of these cases, the non-traditional dwelling house was the debtor's only residence.[9] That was not the situation here.

The court was not able to find any Minnesota cases in which a temporary structure (such as a camper or tent) or mobile structure (such as a car, truck or RV) could constitute a house or dwelling under the homestead statute. Minn. Stat. § 510.01. The trustee and Ms. Monson also

---

[7] *See* Plaintiff's Ex. 15 (records from Stockman Bank listing a Westby, Montana address as his residence); *see also* Plaintiff's Ex. 21 (mortgage for a North Dakota property listing the 7600 Farmhouse as his address).

[8] In Wisconsin, an exempt homestead includes a mobile home and does not require ownership of any real estate. Minnesota requires land as well as a house. *See In re Kyllonen*, 264 B.R. at 27.

[9] *C.f. In re Hurd,* 441 B.R. 116 (B.A.P. 8th Cir. 2010) (horse trailer did not qualify as a dwelling or mobile home under Missouri law even though it was the debtor's only dwelling place).

do not offer any cases on the issue. The court need not decide the issue of whether the camper can be a "house" under the Minnesota homestead law because the Debtor has failed to establish the requirements of ownership and occupancy required by Minn. Stat. § 510.01.

While Minnesota courts favor a liberal construction of homestead interests, the interpretation of homestead interests is not to be strained. *Compare Denzer*, 267 Minn. at 219 *with In re Kyllonen*, 264 B.R. at 27. Adopting the Debtor's arguments would be a strain.

## CONCLUSION

The Debtor has failed to establish the 1502 Property as his homestead under Minn. Stat. § 510.01 prior to August 26, 2013, the date that Ms. Monson's lien attached. Thus, the Debtor cannot avoid Ms. Monson's Judgment Lien on the 1502 Property as it does not impair an exemption to which the Debtor was entitled.

## CONCLUSIONS OF LAW

1. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334.

2. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

3. The judgment lien filed on August 26, 2013 by Jo Ann Monson attached to the property located at 1502 45th Avenue S., Willmar, MN before the Debtor established the same as his homestead.

**ORDER**

IT IS ORDERED: Judgment shall be entered in favor of J. Richard Stermer, Trustee, and against Chad L. Monson. The real property located at 1502 45th Avenue S., Willmar, MN is subject to the August 26, 2013 judgment lien filed by Jo Ann Monson.

LET JUDGMENT BE ENTERED ACCORDINGLY.

                                /e/ Kathleen H. Sanberg
                                KATHLEEN H. SANBERG
                                UNITED STATES BANKRUPTCY JUDGE